JOHN E. HAMILTON'S ASSIGNEE *v.* JOHN P. WINSTON, ET AL.

JOHN P. WINSTON *v.* JOHN E. HAMILTON, ET AL.

**Evidence of Delivery of Deed.**
The acknowledgment and recording of a deed by the grantor constitutes strong evidence of a delivery of the deed.

**Presumption—Burden of Proof.**
The presumption of delivery of a deed arising from its acknowledgement and recording, casts the burden of disproving its delivery upon the party claiming its non-delivery.

**Relationship as Evidence of Fraud.**
The relationship between the parties when proven is of little value as evidence of fraud in a transaction.

APPEAL FROM KENTON CIRCUIT COURT.

October 18, 1879.

OPINION BY JUDGE COFER:

These appeals will be disposed of together, and as if the appeal of Hamilton's assignee had not been previously considered.

There are two principal questions, viz.: 1. Was the deed from Hamilton to Winston delivered? 2. Was it fraudulent as to Hamilton's creditors?

The deed has been acknowledged and recorded. Winston alleges that Hamilton took the deed as his agent to have it recorded. Hamilton testifies that he had it recorded merely for the purpose of putting himself in a position to be able to comply with his contract with Winston and not as his agent, and that he did not deliver it, and never intended to do so until Winston should execute to him a bond to reconvey one-half of the land to him.

There is some evidence corroborating each party, but. we think the preponderance is in favor of Winston. The acknowledgment and recording of the deed by Hamilton constitutes strong evidence of a delivery; and when considered in connection with the testimony of Winston, and the fact that he seems to have exercised control over the land after the date of the deed, leasing parts of it in his own name for several years without, so far as appears, consulting Hamilton on the subject, and without complaint from him, satisfies us that the deed was in fact delivered.

This case is wholly unlike that of *Thompson v. Jackson, Owsley & Co.,* 14 B. Mon. 114. It appeared in that case that the grantee was not apprised of the execution of the deed, and it did not appear that it was made pursuant to an antecedent contract between the grantor and the grantee; and because of these facts it was held that the ordinary presumption that a grantee does accept a conveyance made for his advantage did not apply.

The deed in question here was made in pursuance to an agreement antecedently made between the parties, and the ordinary presumption of delivery from the acknowledgment and recording of the deed cast the burden of disproving the delivery upon Hamilton and his assignee; and treating Hamilton and Winston as equally entitled to credit, we can reach no other conclusion than that the deed was delivered.

There is no sufficient evidence of a fraudulent purpose on the part of either in the execution of the deed. The only evidence even conducing in a remote degree to prove fraud is the alleged inadequacy of price, the statement in Winston's answer that he was convinced that Hamilton must shortly fail, and the relation existing between them. There is much conflicting evidence as to the value of the land at the time. The evidence, as far as it consists of the mere opinions of

witnesses, conduces to prove it was worth considerably more than the price Winston agreed to pay for it.

But we regard the fact that Hamilton purchased it for himself and Gates at $32.50 per acre, and that Gates sold his part for an advance of only $450, or $2.25 per acre, is entitled to much more weight in fixing the real value of the land than the parol evidence. It is true that it is shown that the former owners were anxious to sell, and were willing to submit to a sacrifice in order to realize upon it at once, but it is incredible that in the then state of the money market land situated as this is should have been sold for $32.50 per acre when it was worth $75 or $100, or even $50 per acre.

There is no evidence that Gates was so pressed as to be compelled to sell. True, he did not have the money to meet his part of the draft upon which the purchase money was borrowed. But there is no evidence that he could not have borrowed it as Hamilton did, and if the land was worth even $50 per acre it is not at all probable that he would have been unable either to borrow the money or to sell his interest for greatly more than he got for it.

The statement in the answer that Winston apprehended that Hamilton would shortly fail, when taken in connection with the fact that he was Hamilton's surety for $18,000 or $20,000, may tend to prove that Winston was seeking security against that liability, but is entitled to but very little weight as tending to prove an actually fraudulent intention.

The relationship between the parties is also of little value as evidence of fraud in fact. It should induce the court to scrutinize closely the other evidence of fraud, but unless such other evidence is greatly stronger than in this case, mere relationship between the parties cannot avail.

It must be remembered that Winston undertook to pay cash just as Hamilton had done, and that Hamilton admits that he was "hard run," and largely involved in debt, though there is nothing in the evidence except his bankruptcy, nearly four years after the date of the deed to Winston, indicating that he was then insolvent, or that either he or Winston supposed he was, or would shortly become so.

Waiving the question whether a federal statute of limitations can be interposed to bar an action prosecuted in a state court, we are of the opinion that the action by Winston is not barred by the limitation prescribed in the bankrupt act, even if it can be pleaded here.

We have already decided that Winston became the owner of the

land under the deed from Hamilton. Hamilton continued in possession of the 7½ acres, recognizing Winston as the owner of one-half of the entire tract. He only claimed to be a co-tenant with Winston, and in his schedule recognized that relation. Yet though not Winston's tenant, he owed him allegiance, and his holding was amicable in the absence of anything to change that relation, and the mere assignment to the assignee without notice to Winston, or any such open and notorious act as indicated that he was holding adversely did not work to put the statute of limitation running against him.

Wherefore the judgment is *affirmed* on the appeal of Lewis, assignee of Hamilton, and *reversed* on the appeal of Winston, and the cause is remanded with directions to render judgment in his favor for the recovery of the 7½ acres of land sued for.

*Benton & Benton, for Winston, et al.*

*McKee & Finnell, for Hamilton's Assignee.*

*W. W. Clary, for John E. Hamilton, et al.*